DISTRICT OF COLUMBIA, Appellant,

v.

Deborah WHITE, et al., Appellees.

No. 80–865.

District of Columbia Court of Appeals.

Argued Oct. 19, 1981.

Decided Feb. 19, 1982.

---

David P. Sutton, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellant.

Elise Haldane, Washington, D. C., with whom Robert Case Liotta, and Nathan I. Finkelstein, Washington, D. C., were on the brief, for appellees.

Before NEWMAN, Chief Judge, and FERREN and PRYOR, Associate Judges.

PRYOR, Associate Judge:

On the evening of September 10, 1976, a detective of the Metropolitan Police Department, while acting in the course of duty in Southeast Washington, fired his service revolver, causing the death of George White. In this suit brought by the decedent's wife and two minor children[1] against the District of Columbia[2] under the Wrongful Death Act[3] and Survival Statute,[4] appellees alleged that decedent's death resulted either from an assault and battery by the detective or from his negligence in using excessive force under the circumstances. Appellees also alleged that the District of Columbia had negligently trained the detective.[5] Finding appellant responsible for the negligent shooting death of White, the jury returned a verdict for appellees in the amount of $289,000.[6]

On appeal from that verdict, appellant contends that this court should vacate it on grounds that: (1) there was insufficient evidence concerning the detective's negligent behavior; (2) there was insufficient evidence to support the allegation of negligent training of the detective; and (3) the admission of evidence concerning events preceding the shooting was so prejudicial as to require a new trial. Due to the lack of evidence establishing an appropriate standard of care for training the detective and establishing a breach of that standard by police supervisory officials, we find there was insufficient evidence upon which to submit the negligent training issue to the jury. Accordingly, we hold that the erroneous submission of that issue to the jury

undermines the validity of the jury's general finding of negligence and therefore requires reversal for a new trial.

## I.

On the evening of his death, the decedent, George White, and two friends had been riding bicycles in their Southeast Washington neighborhood when they stopped to talk to another man standing outside his residence. The men were preparing to smoke marijuana when a police car passed by. White made an insulting comment about the two police officers, who, upon hearing the remark, approached the men and asked for identification and bicycle registrations. When White failed to produce any registration, he was informed that his bicycle would be taken to the station. When one of the officers reached for the cycle, decedent objected and an altercation erupted. After an interval of several minutes, White fled the scene; the police broadcast a lookout for him as being involved in an assault on a police officer.

Steven Greenwood, the only civilian witness to the shooting, testified that he saw an unmarked police cruiser driving slowly along the street and heard a detective shout "Halt." The detective exited his car, assumed a "quick draw" position, with his arms outstretched straight in front of him, and pointed his gun at White. According to Greenwood, the decedent was standing between an apartment building and a house, facing the detective with his empty hands at his side, and looked as if he had just stopped running. As White started to turn away, the detective shot him in the back.

1. A third child, also a named plaintiff, died before trial.

2. Initially, the detective, the Chief of Police, and the Mayor were also named defendants. Prior to trial, appellees successfully moved to dismiss the action against the detective. At the close of all the evidence, the actions against the Mayor and Police Chief were also dismissed.

3. D.C.Code 1973, § 16–2701.

4. *Id.*, §§ 11–921, 12–101.

5. In addition, appellees alleged that the District negligently supervised and hired the detective. Following their admission that they presented no evidence on these claims, the trial court directed a verdict for appellant.

6. Challenging the special verdict, which found the District liable for negligence but not liable for assault and battery, appellant unsuccessfully moved for judgment notwithstanding the verdict (n. o. v.) or, in the alternative, for a new trial.

The witness was impeached as to his recollection of events by the introduction of his grand jury testimony indicating that White had been running away from the detective and started to turn toward him when the latter fired the shot. Two other witnesses testified that they saw a motorcycle policeman speed through the parking lot of their apartment building, dismount and disappear. They both heard a shot and then walked around the side of the building to find decedent lying face down in handcuffs. White died before the ambulance called by the police arrived.

Appellees also called Detective Gaston, the officer who fired the shot, who testified, over appellant's objection, as to training he had received from the police department in the safe use of his firearm. Recalled to testify for appellant, Detective Gaston explained that on the night of the shooting he was responding to a radio call regarding an assault on a police officer when he observed the decedent running toward his car. Seeing the detective step out of his car, White turned around and started to run in the opposite direction between an apartment building and a house, but stopped. Detective Gaston noticed another officer pursuing White from the other side of the building with a gun in his hand. The other officer darted back and forth behind the building shouting "drop it," causing the detective to mistake an object, allegedly in White's hand, for a gun. With his service revolver drawn, the detective approached the decedent out of the line of the other officer's fire and ordered the decedent to halt. When White began to turn around to face the detective, Gaston fired his weapon. The other officer substantially corroborated the detective's testimony except that the other officer could only say that there was a shining object in White's hand; he was not certain it was a gun.

7. Under the doctrine of respondeat superior the District of Columbia is liable for the torts of its police officers acting under the scope of their employment. *District of Columbia v. Davis*, D.C.App., 386 A.2d 1195, 1202 (1978). The parties stipulated that the detective was an

## II.

Preliminarily, we address appellant's contention that the verdict should be set aside and judgment entered for appellant on the ground that the jury could not reasonably find in favor of the District as to the intentional tort—assault and battery— and yet find liability for negligence.[7] Appellant contends that all the evidence presented by both parties established that the shooting was intentional and not negligent. In asserting this position, appellant points to the chief witness for the defense, Detective Gaston, who testified that the shooting was intentional, but in self-defense; and to the only non-involved eyewitness, who testified for appellees, that Detective Gaston assumed a "quick draw" position and fired at the decedent from the street. Appellant therefore contends that it was plain error to submit this issue of negligence to the jury since the shooting in this instance could only be viewed as an intentional tort.

In reviewing appellant's claim, neither the trial court nor this court is bound by plaintiff's characterization of the action as negligence. *Kelton v. District of Columbia*, D.C.App., 413 A.2d 919, 922 (1980). Instead, we must examine "the elements of the alleged offense" to determine which causes of action the complaint actually states. *Id.* To allege negligence, a complaint cannot merely make conclusory assertions but must specify a negligent act and "characterize the duty whose breach might have resulted in negligence liability." *Id.* at 922 n.5; *see Maddox v. Bano*, D.C.App., 422 A.2d 763, 764 (1980).

Controlling our decision today is *District of Columbia v. Downs*, D.C.App., 357 A.2d 857 (1976), in which we held that a jury could properly find negligence in the shooting death of decedent although it did not find assault. In that case contradictory

employee of the District acting within the scope of his employment during the events relevant to the shooting. Therefore, appellant is liable for any negligence or intentional tort of Detective Gaston arising from those events.

evidence at trial revealed either that the police shot Downs after he leapt out of a closet where he was hiding during their search of an apartment for narcotics, or that they shot him while he remained crouched in the closet and later carried him to a bedroom. *Id.* at 858–59. The same police regulation on safe use of firearms at issue here was introduced into evidence in that case. *Id.* at 859. On those facts we upheld submission to the jury of both the assault and negligence counts, which posed to the jury "whether [the police officer] deliberately and intentionally shot [the decedent] or whether the shooting resulted from the failure of [the police officer] to act as a reasonably prudent person would under the circumstances of his confrontation with [the decedent]." *Id.* at 860.[8]

 Reviewing the record in this case in light of *Downs*, we hold that there was a basis in the evidence for submitting the question of negligence to the jury and that appellant's motion for judgment n.o.v. was correctly denied.[9] Admitted into evidence, the police regulation on an officer's safe use of firearms [10] established a duty owed decedent, a breach of which would constitute evidence of negligence.[11] Providing evidence concerning a breach of that duty were several witnesses who described the shooting and the circumstances surrounding it.

In addition, evidence of the detective's violation of the District of Columbia statutory provision, which makes use of excessive force by an officer criminal,[12] constituted further evidence of negligence. " '[V]iolation of an ordinance intended to promote safety' can give rise to a negligence action." *Marusa v. District of Columbia,* 157 U.S. App.D.C. 348, 353, 484 F.2d 828, 833 (1973), quoting *Whetzel v. Jess Fisher Management Co.,* 108 U.S.App.D.C. 385, 389, 282

---

**8.** Although intent is not an element of negligence, voluntariness is. According to one noted authority:

To constitute negligence the conduct involved, be it act or omission, must be *voluntary* conduct. This does not mean that the actor intended the injurious result of his conduct or intended that it should produce some intermediate result which ultimately brought about the injury. The requirement is not that any particular state of mind must accompany the act, but simply that the act or omission itself be a conscious manifestation of the actor's will. Thus ... the bodily movement or rest of a man asleep or in a trance will not itself constitute negligence. [2 F. Harper & F. James, The Law of Torts § 16.1 at 901–02 (1956).]

**9.** A judgment n.o.v. "shall be awarded only when, viewing the evidence and all reasonable inferences in the light most favorable to the party who secured the jury verdict, no juror could reasonably reach a verdict for the opponent of the motion." *Webster v. M. Loeb Corp.,* D.C.App., 400 A.2d 319, 320 (1979); accord, *Marcel Hair Goods Corp. v. National Savings & Trust Co.,* D.C.App., 410 A.2d 1, 5 (1979); *Rich v. District of Columbia,* D.C.App., 410 A.2d 528, 532 (1979). "The question ... is not whether there is sufficient evidence in the record to support the findings and decision of the judge, but whether ... a jury of reasonable men could properly have reached a verdict in favor of appellant, the party upon whom the onus of proof was imposed." *Faniel v. Chesapeake & Potomac Telephone Co.,* D.C.App., 404 A.2d 147, 150 (1979), *citing Baker v. D.C. Tran-*

*sit System, Inc.,* D.C.App., 248 A.2d 829, 831 (1969). "[W]here there is no basis in the evidence for a finding of ... negligence, it is error to instruct on the subject and thereby submit to the jury an issue outside the evidence." *Montague v. Henderson,* D.C.App., 409 A.2d 627, 628–29 (1979).

**10.** District of Columbia Regulation Number 72–2 (January 14, 1972) reads in pertinent part:

(a) It is the policy of the Metropolitan Police Department that each member of the department shall in all cases use only the minimum amount of force which is consistent with the accomplishment of his mission, and shall exhaust every other reasonable means of apprehension or defense before resorting to the use of firearms.

(b) No member of the Metropolitan Police Force shall discharge a firearm in the performance of police duties except ...:

(1) To defend himself or another from an attack which the officer has reasonable cause to believe could result in death or serious bodily injury.

**11.** *See* 2 Wigmore, Evidence § 461, at 606–07 (Chadbourn rev. 1979).

**12.** D.C.Code 1973, § 4–176 reads:

Any officer who uses unnecessary and wanton severity in arresting or imprisoning any person shall be deemed guilty of assault and battery, and, upon conviction, punished therefor.

F.2d 943, 947 (1960); *accord, Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 202, 88 S.Ct. 379, 386, 19 L.Ed.2d 407 (1967), *citing* Restatement (Second) of Torts § 286. To create civil liability, the criminal statute allegedly violated (1) should be one designed to promote safety; (2) must include plaintiff as a "member of the class to be protected"; and (3) must impose specific duties on the defendant. *Marusa v. District of Columbia, supra* at 354, 484 F.2d at 834. However, the court may decline to impose civil liability if sufficient policy considerations militate against it. *Id.*

We think that D.C. statute § 4–176 meets the criteria of *Marusa.* Criminal sanctions penalizing police use of excessive force promote the safety of city residents by deterrence. Plaintiffs fall within the class of people that the statute was designed to protect since they are the wife and children of a man killed allegedly in violation of this statute. The statute specifically imposed a duty on Detective Gaston, who was trained in the use of his firearm and knew, or should have known of the penalties for misuse of it. Finally, we see no countervailing policy reason against allowing evidence of a violation of this provision to constitute evidence of negligence. Thus, in light of the foregoing discussion, we hold that submission of the question of negligence to the jury, under the facts of this case, was not error.[13]

---

**13.** Appellant argues that several cases, in which the court found no evidence of negligence, are factually similar to this case. *Maddox, supra*, and *Maes v. Tuttoilmondo*, 502 P.2d 427 (Colo.App.1972) are inapposite since the allegations of negligence in each case were dismissed on summary judgment due to the conclusory nature of the pleadings on the issue of negligence. Two other cases appellant relies on, *City of Louisville v. Yeager*, 489 S.W.2d 819 (Ky.App.1973), and *Martin v. Yeoham*, 419 S.W.2d 937 (Mo.App.1967) are also inapposite since in neither did plaintiffs introduce a regulation nor other evidence to establish a standard of care or a deviation from that standard, which might have created negligence liability.

**14.** The trial court delivered the following instruction on negligent training:

### III.

Appellant also challenges the sufficiency of the evidence concerning the District of Columbia's negligent training of Detective Gaston in the use of his firearm. It is asserted that the trial court's instruction on this point lacked factual support in the record due to the absence of any evidence, expert or otherwise, concerning an appropriate standard of care for training Detective Gaston and concerning a breach of that standard by police supervisory officials.[14]

Proof of a deviation from the proper standard of care does not require expert testimony where the events from which the negligence arose are "within the realm of common knowledge and everyday experience." *Matthews v. District of Columbia*, D.C.App., 387 A.2d 731, 734–35 (1978); *see Gaither v. District of Columbia*, D.C.App., 333 A.2d 57, 60 (1975). However, expert testimony is required when the subject presented is "so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman." *Hughes v. District of Columbia*, D.C.App., 425 A.2d 1299, 1303 (1981), *citing District of Columbia v. Davis*, D.C.App., 386 A.2d 1195, 1200 (1978); *Waggaman v. Forstmann*, D.C.App., 217 A.2d 310, 311 (1966).

Under the circumstances presented in a recent case we concluded that "questions of adequate weapons safety training and evaluation are technical questions not suffi-

With regard to plaintiff's [*sic*] claim of negligent training, plaintiff [*sic*] has the burden of demonstrating, not only the District of Columbia was negligent in training Detective Gregory Gaston, but that such negligence proximately caused their injuries. It is not sufficient for plaintiff [*sic*] to show, for instance, that Detective Gaston was improperly trained. Plaintiffs must also show that any such failure in training was the efficient cause of George White's death.

If, in your minds, plaintiff [*sic*] has failed to demonstrate that the shooting would not have happened but for the negligent training, then you must find for the District of Columbia on the issue of negligent training.

ciently within the common experience of jurors to obviate the need for expert testimony." *District of Columbia v. Davis, supra* at 1200. In that case an off duty police officer, preparing to take a shower, unholstered his gun among social acquaintances at an apartment in Northeast Washington and shot the plaintiff in the left thigh. *Id.* at 1197–98. Upholding the directed verdict for the District on the issue of negligent supervision and training of the police officer, we rejected plaintiff's contention that the standard of ordinary care governed and that evidence of the training the officer actually received was sufficient. *Id.* at 1201.

 The instant case is factually similar to *Davis* in that appellees presented only the detective's version of training he actually received, but did not present testimony, expert or otherwise, as to what the department's general training plan was or should have been. Detective Gaston testified that his training, when he first joined the police force, consisted of four months of training at police "rookie school" and subsequent requalification at a firing range at six month intervals, where his supervisors read parts of the police manual respecting appropriate use of a service revolver.[15] Contrary to appellees' assertions that testimony concerning the detective's deviation from that police department regulation constituted evidence of negligent training, that testimony is evidence of the detective's negligence on the scene of the shooting, as described in part II *supra.*

The absence of any other evidence on negligent training implicitly left the jury with unanswerable questions concerning the scope of the District's training program and the format, content and frequency of an adequate training and retraining program.[16] Absent testimony to that effect, the jury was forced to engage in speculation, which, of course, is prohibited. *See Jones v. Safeway Stores, Inc.,* D.C.App., 314 A.2d 459, 460–61 (1974).

In reviewing the trial judge's decision on expert testimony, we are mindful of his broad discretion on this matter: "whether or not to admit (and presumably to require) expert testimony is within the discretion of the trial court, whose ruling should be sustained unless clearly erroneous." *District of Columbia v. Davis, supra* at 1200, *citing Ohio Valley Construction Co., Inc., v. Dew,* D.C.App., 354 A.2d 518, 522 (1976). However, we find the court's submission of this issue to the jury clearly erroneous in light of the lack of expert or other testimony establishing a standard from which the jury could consider an alleged deviation.[17]

The erroneous submission of the negligent training issue to the jury undermines the validity of the jury finding of negligence. Since the jury did not specify whether it was finding appellant negligent under a theory of direct liability for negligently training the detective or under a theory of vicarious liability for the detective's negligence, we do not know whether the verdict rests on a permissible or impermissible theory of liability. Where there are several theories of liability, one of which is impermissible, and the court "cannot determine on which theory of liability the jury relied when finding in favor of the appellant, leaving open the possibility that it may have relied on the impermissible one, the case must be remanded for retrial." *Murphy v. United States,* ——— U.S.App.D.C. ———, 653 F.2d 637, 646 (1981); *see Sunkist Growers Inc. v. Winckler & Smith Citrus Products Co.,* 370 U.S. 19, 29–30, 82 S.Ct. 1130, 1135–1136, 8 L.Ed.2d 305 (1962); *Wilmington Star Mining Co. v. Fulton,* 205 U.S.

---

**15.** D.C.Reg.No. 72–2, *supra* note 10.

**16.** Two experts qualified in the field of firearms, firearm safety and police training presented detailed testimony on what an adequate police training program for safe handling of firearms would entail in *Peer v. City of Newark,* 71 N.J.Super. 12, 176 A.2d 249 (Super. Ct.App.Div.1961).

**17.** *Cf. Hughes v. District of Columbia, supra* at 1303 (in damage suit by inmate, expert testimony necessary to establish negligent deviation from proper correctional procedures to protect prisoners); *accord, Matthews v. District of Columbia, supra* at 735.

60, 79, 27 S.Ct. 412, 419, 51 L.Ed. 708 (1907); *Montague v. Henderson*, D.C.App., 409 A.2d 627, 629 (1979); *Glass v. Seaboard Coast Line Railroad Co.*, 457 F.2d 1387, 1389 (5th Cir. 1972).

### IV.

■ Appellant's final contention is that admission, over appellant's objection, of the circumstances leading up to the shooting was so prejudicial an error as to require a new trial. Admission of circumstantial evidence to set the scene for the radio transmission and the shooting that later occurred was in the broad discretion of the trial court, and we do not find an abuse of discretion here.

*Reversed and remanded for a new trial.*