**Juanita Kennedy MORGAN, Plaintiff,**

v.

**Marion S. BARRY, Jr.,
et al., Defendants.**

**Civ. A. No. 88–1578.**

United States District Court,
District of Columbia.

Feb. 21, 1992.

William L. England, Clifford A. Brooks, Brooks & England, Washington, D.C., for Juanita Kennedy Morgan.

Metcalfe King, Ellis, King & Priolecur, Silver Spring, Md., for Leon Faulkner, Martha Faulkner & Ruth Humbles.

John F. Pressley, Jr., Ass't. Corp. Counsel, Washington, D.C., for District of Columbia, Marion Barry, Maurice Turner, Addison Davis, et al.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

The Court has before it two motions for summary judgment filed by various defendants: a motion to dismiss or for summary judgment filed by defendants Leon Faulkner, Martha Faulkner and Ruth Humbles ("Faulkner Motion"), and a motion for summary judgment filed by defendants District of Columbia and several top officials. Additionally, there is a motion to vacate a default judgment against Metropolitan Police Officer David Anderson. This opinion will discuss each in turn.

### I. *Background*

This case arises out of a home sale and the subsequent eviction of the original owner.[1] On May 26, 1987, plaintiff Juanita Kennedy Morgan, a seventy-five-year-old resident of the District of Columbia, sold her house located at 2705 30th Street, N.E., Washington, D.C. to defendants Martha Faulkner and her sister Ruth Humbles. Complaint ¶ 14. Three days later, plaintiff's attorney paid the defendant purchasers $1,195 for plaintiff's right to remain on the premises for 30 days beyond May 26, 1987. Complaint ¶ 15. However, on June 9, 1987, defendant Leon Faulkner visited the premises with a group of police officers. The officers told plaintiff that Faulkner was claiming a right of immediate possession. After plaintiff told them of her payment, the officers and Faulkner left. Complaint ¶ 16. The complaint alleges that later that day, the Faulkners and several other defendant police officers arrived at the premises, accused plaintiff of having a gun, and then searched the premises and plaintiff's person. Complaint ¶ 17. The police officers told plaintiff that the Faulkners had a right to immediate possession and that if she did not leave they would arrest her. Plaintiff left at that time, and the Faulkners changed the locks and took possession of the property and of plaintiff's possessions. Complaint ¶ 19.

Upon plaintiff's subsequent motion, the Superior Court of the District of Columbia issued a temporary restraining order, preventing defendants from interfering with plaintiff's quiet enjoyment until June 27, 1987. By consent of both parties, a praecipe was filed on June 23, 1987 in the District of Columbia Superior Court, whereby the action was dismissed without prejudice and plaintiff agreed to vacate the premises by June 30, 1987. *See* Plaintiff's Opposition to Faulkner Motion Exs. D & E.

Plaintiff's present complaint lists ten counts alleging causes of action pursuant to 42 U.S.C. §§ 1983, 1985, 1986, the Fourth, Fifth and Fourteenth Amendments, and D.C.Code §§ 12–309 and 1–1201, *et seq.* The first count alleges that defendants conspired to deprive plaintiff of the right to be secure in her person and effects against unreasonable search and seizure in violation of the Fourth, Fifth and Fourteenth Amendments, and to deprive her of due process of law in violation of the Fifth and Fourteenth Amendments. The second count charges that since plaintiff had a history of making written and verbal complaints to the police, and as she had been involuntarily committed to Saint Elizabeth's Hospital after she fired a gun at a building behind her residence[2], the police had promulgated or negligently permitted to exist a practice or procedure whereby "plaintiff's requests for police assistance and complaints regarding same were presumed invalid and ignored, and complaints to police officials by other individuals

---

1. What is at bottom a relatively simple case has, with the assistance of counsel, burgeoned into litigation charging constitutional and statutory violations on the part of the District of Columbia, its mayor, chief of police, and numerous other persons. It has become a monstrosity.

2. A police officer also alleged that he had confiscated four guns from plaintiff over a period of 12 years and that other officers had also confiscated guns. Complaint ¶ 25.

against plaintiff were presumed valid" and contributed to a gross neglect of legal duty that caused the events of June 9, 1987. *See* Complaint ¶ 26. Plaintiff also claims a violation of D.C.Code § 16–1501 for her wrongful eviction, and she states common law claims of assault, battery, false imprisonment, severe emotional distress, negligently inflicted emotional distress, trespass and dispossession of chattel. Plaintiff seeks compensatory damages of $350,000 and punitive damages of $2,000,000. Complaint at 19–20.

There are currently fifteen defendants in this action, including the government of the District of Columbia and those persons who held the positions of mayor, police chief, and deputy chief at the time of the incident.[3] Eight police officers who allegedly participated in the eviction are also named parties.[4] Additionally, the three owners and residents of the house are defendants: Leon and Martha Faulkner and Ruth Humbles.[5]

II. *Defendants Leon Faulkner, Martha Faulkner, and Ruth Humbles' Motion to Dismiss the Complaint*

◼ Among the motions presently pending before the Court is defendants Leon Faulkner, Martha Faulkner, and Ruth Humbles' Motion to Dismiss the Complaint, Or, in the Alternative, for Summary Judgment pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 56, filed February 2, 1990.[6] This motion to dismiss was filed after these defendants answered plaintiff's complaint. As a Rule 12(b)(6) motion is untimely when filed after an answer, "some other vehicle, such as a motion

for judgment on the pleadings or for summary judgment, must be used to challenge the failure to state a claim for relief." 5A Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1357 at 300–01 (2d ed. 1990) (hereinafter *Federal Practice* ). We will therefore consider this motion under the standards for summary judgment.

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Further, inferences drawn from the factual material must be viewed in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

Defendants argue that this Court lacks jurisdiction over the local law claims, that the issue of wrongful dispossession of real property was decided in a Superior Court case and is barred by collateral estoppel, and that there is no claim against Martha Faulkner and Ruth Humbles. All but the last of these arguments fail, and while the argument to dismiss the two sisters may ultimately have merit, summary judgment at this juncture is inappropriate.

---

3. Marion Barry, Maurice Turner, and Addison Davis, respectively. All are sued in their individual and official capacities.

4. John Roland, John Alter, Larry Brillhart, Dwayne Anderson, George McMillan, James Nelles, Kenneth Vandervfliet and John Rowlands. The suit is also brought against John Doe II, unknown police officers who were present on the premises.

5. Five additional defendants have been dismissed since the initiation of the suit: Wilbur Jackson, Robert Henson, James Proctor, Sam Wofford, and Yvonne Tracy. Further, a default

judgment has been entered against Police Officer David Anderson. A motion to vacate that judgment is pending.

6. The Court has recently received another Motion to Dismiss from these defendants; however, the motion is not in proper form under the local rules, and merely reaffirms the defendants' desire not to be involved in the case, without adding any additional information. A response has not been received. The disposition of the February 2, 1990 motion will apply to the new request. *See* Motion to Dismiss filed September 12, 1991.

■ The first two of these arguments were presented in substantially the same form in the Motion of Defendants Leon Faulkner, Martha Faulkner and Ruth Humbles to Dismiss the Complaint Or, in the Alternative, For Summary Judgment, filed on February 24, 1989. The Court denied that motion without prejudice in an Order of May 30, 1989, stating "it appear[s] that this Court has pendent jurisdiction over the claims asserted against these defendants." The law of the case argues against our reexamination of these objections. Law of the case is designed to promote judicial efficiency and the judicious resolution of claims. "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." 18 *Federal Practice* § 4478 at 788 (1981); *see Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (promotes finality and efficiency of the judicial process).

Judges do retain the ability to reexamine their prior rulings, especially if there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." 18 *Federal Practice* § 4478 at 790 (1981). Here defendants have not asserted any change in circumstances that would justify the refiling of the motion. They have not presented new evidence nor changes in controlling law. Consequently, this Court would be well within its discretion to refuse to consider the new motion to the extent it argues the same points as the earlier one. However, as the Order was issued over two years ago and did not explain the ruling, the Court will discuss the arguments raised.

■ Defendants first argue that this Court is without jurisdiction over the common law tort claims. But defendants overlook the principle of pendent jurisdiction, whereby a federal court can decide issues that arise from a common nucleus of operative facts. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).[7] "Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims ..." *Id.* at 726, 86 S.Ct. at 1139.

The Court has jurisdiction over the federal question claims asserted against these defendants. At this point in the proceedings, plaintiff has made out a colorable claim of the violation of her constitutional rights by these defendants. While further examination may show that the plaintiff's claim is without merit, there are still questions of material fact as to defendants' intent that preclude a summary judgment motion.[8]

---

7. In *Gibbs,* the Supreme Court noted:

Pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority ...," and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

383 U.S. at 725, 86 S.Ct. at 1138 (citations omitted, emphasis in original).

8. Although there is usually no cause of action when private citizens deprive one another of constitutional rights, a claim is cognizable when they conspire with state actors. *See Tower v. Glover,* 467 U.S. 914, 920, 104 S.Ct. 2820, 2824, 81 L.Ed.2d 758 (1984); *Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980) (an otherwise private person acts under color of state law when engaged in a conspiracy with state officials to deprive another of federal rights); *cf. Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 941–42, 102 S.Ct. 2744, 2755–56, 73 L.Ed.2d 482 (1982) (private creditor was acting under color of law when jointly participates with state officials in seizure of property); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 174 n. 44, 90 S.Ct. 1598, 1617 n. 44, 26 L.Ed.2d 142 (1970) ("a private person who discriminates on the basis of race with the knowl-

In the present action, the common law claims arise from the dispossession and eviction of the plaintiff—the very same set of events that produced plaintiff's constitutional tort claims. The exercise of pendent jurisdiction is within the Court's discretion and it seems clear that a single trial on this one set of events, with these parties, would be preferable to requiring them to litigate in two fora. *Cf. Wright v. City of Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 432 n. 12, 107 S.Ct. 766, 775 n. 12, 93 L.Ed.2d 781 (1987). Consequently, we will exercise pendent jurisdiction over the local law claims.

■ Defendants secondly assert that the claims are barred by the principle of collateral estoppel. Basically, they argue that the issue was previously litigated in the Superior Court of the District of Columbia. While defendants might be correct if the claims *were* litigated, an examination of the record indicates that such litigation never took place. Plaintiff sought, and obtained, a temporary restraining order to prevent her ouster from the house for a month from the District of Columbia Superior Court. That restraining order was vacated upon the consent of both parties to permit plaintiff to stay in the house and to vacate by June 30, 1987. *See* Praecipe, *Morgan v. Faulkner*, No. 5022–87 (D.C.Super.Ct. filed June 23, 1987), Plaintiff's Opposition to Faulkner Motion Ex. E. Further, in the Praecipe, both parties agreed to withdraw certain other claims against each other, notably a small claims court case and a citizens complaint that had been filed. *See id.* The merits of the case were not litigated.

Whether a dismissal constitutes an adjudication on the merits is an issue for state law. The District of Columbia Court of Appeals has held that a dismissal without prejudice does not have *res judicata* effect. *See Interdonato v. Interdonato*, 521 A.2d 1124, 1131 n. 11 (D.C.1987) ("The crucial element of *res judicata* is a final judgment on the merits and it is beyond dispute that

a dismissal without prejudice does not determine the merits." (citation omitted)); *cf. Bazata v. National Insurance Co.*, 400 A.2d 313, 314 (D.C.1979) (" 'At common law dismissal on a ground not going to the merits was not ordinarily a bar to a subsequent action on the same claim.' ") (quoting *Costello v. United States*, 365 U.S. 265, 285, 81 S.Ct. 534, 545, 5 L.Ed.2d 551 (1961)). Indeed, Judge King of the District of Columbia Superior Court, during the hearing on June 23, 1987, expressly noted that additional litigation was probable:

What has not been addressed today is the question of what legal rights, if any, might grow out of or still remain in the situation, which was created when, if it's accepted by a trier of fact, things happened as they are alleged to have happened, namely, that the defendants [throw] the plaintiff out by getting the police over and telling her that she had to leave.

If that case were to be pursued, there's ... a very good probability that the plaintiff might prevail on that legal action, which has nothing to do with this case. Now that would be a legal action or damages for wrongful eviction, and that is a recognizable—that's part and parcel of the rule, which says you can't throw people out. One, you can't do it, and the Court will tell you not to do it. And, number two, if you do it wrongly, there is a potential legal claim of action or cause of action.

*See* Transcript of Hearing at 6–7, Plaintiff's Opposition to Faulkner Motion Ex. F. As plaintiff's claims were never litigated to final judgment, *res judicata* and collateral estoppel cannot bar the instant suit.

■ Finally, defendants argue that the suit should not proceed against Martha Faulkner and Ruth Humbles. Plaintiff has asserted that Martha Faulkner and Ruth Humbles conspired with and acted jointly with the police to unlawfully evict plaintiff from possession of real property. While the pleadings and the evidence thus far

edge of and pursuant to a state-enforced custom requiring such discrimination, is a 'participant in joint activity with the State,' and is acting

'under color of' that custom for purposes of § 1983").

submitted indicate that Mrs. Humbles was not present at the scene, this is not conclusive as to the lack of participation. There still remains a triable issue of fact as to whether Leon Faulkner's claim to possession was on their behalf as the legal owners of the property. Consequently, summary judgment would be inappropriate at this time.

Therefore, for the reasons given above, Defendants Leon Faulkner, Martha Faulkner, and Ruth Humbles' Motion to Dismiss, or, in the Alternative, for Summary Judgment is denied.

### III. *Defendants Barry, Turner, Davis and the District of Columbia's Motion for Summary Judgment*

This Court also has pending a motion for summary judgment by the government of the District of Columbia, the mayor, the police chief and the deputy chief of police that was filed on January 22, 1990. These defendants claim that the complaint fails to state a cause of action against them and that the District of Columbia is not liable for the constitutional deprivations by its employees. The defendants also allege that there are no material facts in dispute;[9] and any common law claims are beyond the jurisdiction of this court.[10] For the reasons that follow, we grant the motion in part and deny it in part.

### A. Liability of the District of Columbia

■ The District of Columbia can be held liable for its deprivations, committed by its employees, that result from policies which are unconstitutional. It is well established that municipalities are "persons" within the meaning of 42 U.S.C. § 1983. *See Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). Although § 1983 authorizes suit for constitutional deprivations visited pursuant to "custom", the Su-

preme Court has rejected the use of *respondeat superior* as a means of attaching liability. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 121, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988). Instead, the deprivation must be the result of unconstitutional *policies. See Praprotnik,* 485 U.S. at 122, 108 S.Ct. at 923.

■ Defendants argue that they cannot be held liable under § 1983 because they did not create any policy of unconstitutional police conduct. Defendants assert that "Plaintiff can present no evidence of the existence of an unconstitutional municipal policy governing the alleged conduct of the police officers in this case because the city's policy is strict and designed to protect the constitutional rights of citizens." Memorandum of Points and Authorities in Support of the Motion of Defendants Barry, Turner, Davis and The District of Columbia for Summary Judgment at 4–5. This argument has its limitations. A written policy proclaiming the supremacy of citizens' constitutional rights standing alone does not necessarily insulate a municipality and its top officials from liability for the constitutional torts of its employees.

The Supreme Court has suggested four principles that guide when "a decision on a single occasion may be enough to establish an unconstitutional municipal policy." *Praprotnik,* 485 U.S. at 123, 108 S.Ct. at 924. These principles are:

First, a majority of the Court agreed that municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability. Third, whether a particular official has "final policymaking au-

---

9. Defendants claim that plaintiff lacks competent expert testimony to establish claims of negligent training and supervision. Whether or not plaintiff will be able to prove her claims remains to be seen, however there is no requirement that plaintiff present expert testimony at this time. Defendants might have been trying,

however inartfully, to argue that plaintiff did not meet the heightened pleading standard required in constitutional tort cases. This argument will be discussed more fully *infra.*

10. As previously discussed, this Court has pendent jurisdiction over the common law claims.

thority" is a question of *state law.* Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the city's business.

485 U.S. at 123, 108 S.Ct. at 924 (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 480–83, 106 S.Ct. 1292, 1298–1300, 89 L.Ed.2d 452 (1986) (citations omitted)) (emphasis in original). Further, the authority to make policy that will give rise to municipal liability is the authority to make final policy. 485 U.S. at 127, 108 S.Ct. at 926. In this case then, the District of Columbia can be held responsible under § 1983 for the eviction of plaintiff if it was the product of a sanctioned policy ordered or allowed to exist by a municipal official with final policy-making authority in that area.

▆▆▆ But the municipality can not be liable under § 1983 if there is no constitutional violation. Count Two of the Complaint alleges that the police "promulgated, or negligently permitted to exist an unlawful policy, practice and procedure whereby plaintiff's requests for police assistance were presumed invalid and ignored." However regrettable this is, it does not amount to a constitutional violation. A long line of cases stresses that police do not owe a duty of protection to any individual citizen. Only when there is a "special relationship" between the individual and the municipality, may the police owe an affirmative duty. *See Platt v. District of Columbia,* 467 A.2d 149, 151 (D.C.1983); *Warren v. District of Columbia,* 444 A.2d 1, 3 (D.C.1981) (*en banc*). A plaintiff's request for assistance does not create such a special duty.[11] In *Morgan v. District of Columbia,* 468 A.2d 1306 (D.C.1983) (*en banc*), the Court of Appeals for the Dis-

trict of Columbia discussed the difficulty in establishing a special relationship with the police:

[A] special relationship does not come in to being simply because an individual requests assistance from the police. Otherwise, a police officer's general duty to the public inevitably would narrow to a special duty to protect each and every person who files a complaint with the department and attaches a request for help. Under these circumstances, the no-liability rule is particularly salutary: individual citizens are in no position to direct the discretion of police officers whose primary responsibilities must be focused broadly in attending to the safety of the public at large. A plaintiff, in short, "cannot unilaterally call into existence a special relationship."

*Morgan v. District of Columbia,* 468 A.2d 1306, 1313 (D.C.1983) (citations omitted) (quoting *Haehl v. Village of Port Chester,* 463 F.Supp. 845, 851 (S.D.N.Y.1978)). Plaintiff asserts that police ignored her complaints because she had previously been involuntarily committed to Saint Elizabeth's Hospital by the police. However, involuntary commitment at an earlier time does not create a special relationship such that police would be required to respond specifically to her calls. *See, e.g., DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 201, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989) ("That the state once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all"). Consequently, plaintiff's constitutional claim cannot go forward against these defendants[12] insofar as

---

11. The facts in *Warren v. District of Columbia* are horrifying. Two women were present in a boarding house when another woman was being raped in a downstairs room. They called the police, but the police who responded did not enter the house. They then called the police a second time and were told that help was forthcoming. At this point they yelled to their friend and consequently alerted the rapists to their presence. They were then raped, robbed, and held captive for 14 hours. The police dispatch-

er never relayed the second call to any officers. The Court of Appeals for the District of Columbia dismissed the case, holding that there was no general duty to provide police protection and that no special relationship existed between the victims and the police that would justify such a duty to protect. 444 A.2d at 2–3. Plaintiff Morgan's claim does not rise to this level and a special relationship was not created.

12. Barry, Turner, Davis and the District of Columbia.

it relies on an alleged policy of not responding to plaintiff's complaints.

▇▇ Plaintiff has also alleged that the municipality negligently failed to train the defendant police officers. *See* Complaint ¶¶ 23–29. Although the municipality can not be held liable under § 1983 for isolated acts of employees that are not part of an established policy or custom, inadequate training of police can amount to a custom or policy that gives rise to liability.[13] *See City of Canton v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); *Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C.Cir.1988), *cert. denied* 489 U.S. 1065, 109 S.Ct. 1339, 103 L.Ed.2d 809 (1989). But simple negligence is not enough. The Supreme Court has ruled that failure to train will only serve as the basis for § 1983 liability where it "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. at 388, 109 S.Ct. at 1204. This deliberate indifference requires a high degree of fault. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." [14] *Harris*, 489 U.S. at 389, 109 S.Ct. at 1205; *Dorman v. District of Columbia*, 888 F.2d 159 (D.C.Cir. 1989); *Graham v. Davis*, 880 F.2d 1414 (D.C.Cir.1989).

▇▇ Plaintiff has not pled with particularity the unconstitutional policy or custom that caused the deprivation of her rights.[15] Plaintiff's complaint is sorely lacking in the type of specificity required for a successful claim of constitutional deprivation. There is an insufficient basis to find that there was in fact such a policy of deficient training. She has not produced any evidence that would indicate the type of indifference to rights of parties necessary to hold the municipality liable under § 1983. Bald allegations will not support a "fishing expedition" and are not enough to survive a motion for summary judgment. Accordingly, we grant defendant District of Columbia's motion for summary judgment.

### B. Liability of Defendants Barry, Turner and Davis

Defendants Barry, Turner, and Davis are sued in both their individual and official capacities. For the reasons that follow, we grant defendants' motion for summary judgment in their individual capacities, but deny it for suit in their official capacities.

▇▇ The defendants may be sued in their official capacities. Although they cannot be held liable on the § 1983 claims under a theory of *respondeat superior, see Haynesworth v. Miller*, 820 F.2d 1245 (D.C.Cir.1987), if they authored, implemented, or allowed to exist an unconstitutional policy and they maintained final authority over such policy, they can be held liable on the constitutional tort claim. While plaintiff's claims against these three officers in their official capacities suffer many of the same deficiencies in pleading as the related claims against the District of Columbia, we find it inappropriate to grant this aspect of their motion for summary judgment at this time.

▇▇ On the other hand, plaintiff's suit against these defendants in their personal capacities must be dismissed because plaintiff has not met the heightened pleading

---

**13.** Negligent training of police officers also states a cause of action in the District of Columbia. *See Hunter v. District of Columbia*, 943 F.2d 69, 73 (D.C.Cir.1991); *District of Columbia v. White*, 442 A.2d 159, 164–65 (D.C.1982); *District of Columbia v. Davis*, 386 A.2d 1195, 1199–1201 (D.C.1978).

**14.** The Supreme Court explained that the "focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." 489 U.S. at 390, 109 S.Ct. at 1205–06. Further, the deficient training must have actually caused the constitutional violation. *See id.* at 391, 109 S.Ct. at 1206.

**15.** Generally, constitutional tort claims against the government are subject to a heightened pleading standard. *See Andrews v. Wilkins*, 934 F.2d 1267, 1269 (D.C.Cir.1991); *Smith v. Nixon*, 807 F.2d 197, 200 (D.C.Cir.1986). Plaintiff has satisfied this standard as her allegations are sufficiently precise to put defendants on notice of her claim. *See Andrews*, 934 F.2d at 1269–70. Her pleadings fall short where she alleges a policy of insufficient training.

standard under § 1983.[16] Plaintiff's complaint against the officials must meet three related requirements. First, the complaint must be sufficiently detailed to enable this court to decide if the claim should proceed. Second, the pleaded facts must show that the officials violated a constitutional right. Third, "because the officer may have a qualified immunity from liability for his conduct ... the complaint must demonstrate that the officer's conduct violated a constitutional right ... that was clearly established at the time of the" incident. *Hunter v. District of Columbia*, 943 F.2d 69, 75 (D.C.Cir.1991). We need not reach the issue of whether these officials were subject to a qualified immunity because the complaint is not sufficiently detailed to permit a claim of failure to train to proceed against the officials.

"In order that an official also be spared the burdens of discovery and trial upon the basis of allegations that will not ultimately support a judgment against him, we require that a complaint alleging conduct by a government official performing a discretionary function meet a 'heightened pleading' standard. That is, it must provide a greater degree of factual specificity than is ordinarily necessary under the notice pleading approach of the Federal Rules of Civil Procedure." *Hunter*, 943 F.2d at 75 (citations omitted). "[A] claimant must make 'nonconclusory allegations' that are 'sufficiently precise to put defendants on notice of the nature of the claim and enable them to prepare a response and where appropri-

ate, a summary judgment motion on qualified immunity grounds.'" *Andrews v. Wilkins*, 934 F.2d 1267, 1269–70 (D.C.Cir. 1991) (quoting *Hobson v. Wilson*, 737 F.2d 1, 29 (D.C.Cir.1984)).

Plaintiff's complaint does not meet this pleading standard. While the complaint is in tedious detail, the only constitutional right that these defendants allegedly may have violated is the right of a citizen to be free from deliberate indifference on the part of the police to the rights of plaintiff and persons with whom police come into contact. As previously noted, there is no constitutional right to have calls to the police answered.[17] The complaint does not demonstrate that the officials' conduct constituted a failure to train that would rise to a constitutional violation. Nor does it show that that right was 'clearly established' at the time of the incident. Indeed, there is almost nothing in the complaint about the failure to train argument against these officials. Plaintiff did not plead that no reasonable city officials in these positions could have believed that their actions were lawful. As plaintiff's claim against these officials must rely on a theory of failure to train, plaintiff would have to plead a high level of negligence with regard to training of subordinate police officers, bordering on recklessness, to subject these officials to personal liability. Plaintiff does not even allege that these high officials authored, implemented, or allowed to exist a policy of deficient training.[18]

---

**16.** Defendants can not assert any immunity against suit in their official capacity, except "forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *See Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985). As the District of Columbia does not possess any immunities in this suit, these named defendants cannot assert any immunity to suit in their official status. Defendants could be held personally liable under § 1983 as they were acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 50, 108 S.Ct. 2250, 2256, 101 L.Ed.2d 40 (1988) ("[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.").

**17.** Insofar as the plaintiff's complaint rests upon allegations of malice on the part of the police in

not responding to her complaints as they do others, the plaintiff must plead the unconstitutional motivation and "do so with the offer of proof required by our heightened pleading standard." *Seigert v. Gilley*, 895 F.2d 797, 802 (D.C.Cir.1990), *aff'd* —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Plaintiff has not so pled with respect to the mayor and top police officials. As the Court has rejected such an approach to hold these officials liable, as there is no duty, we need not discuss whether the officials are immune from such actions. In any case, plaintiff has not satisfactorily pled the existence of such unconstitutional motivation.

**18.** Plaintiff does assert that these officers allowed to exist a policy whereby her complaints were ignored. As discussed previously, however, this does not amount to a constitutional

Plaintiff's pleading based on defendants' alleged failure to train is insufficient to permit the claim to go forward against Barry, Turner and Davis in their individual capacities.

Defendants further assert that they cannot be held liable in their individual capacities because they hold a qualified immunity for their actions. *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985). If indeed, they are immunized from suit, they have a "positive right" not to be forced to trial. *Siegert v. Gilley,* 895 F.2d 797, 800 (D.C.Cir. 1990), *aff'd* —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Mitchell v. Forsyth,* 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985).

▮ Qualified immunity from suit ordinarily attaches to government officials performing discretionary functions. *Siegert,* 895 F.2d at 801. To overcome the immunity, a plaintiff must show "that the defendant violated 'clearly established statutory or constitutional rights of which a reason-able person would have known' ", *Siegert,* 895 F.2d at 801 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).[19] "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *see Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Furthermore, the plaintiff must plead that no reasonable official in the position of the defendants could have believed their actions to be lawful, in light of clearly established law.[20] *Siegert,* 895 F.2d at 802; *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039–40. Plaintiff has failed to sufficiently plead in order to survive a qualified immunity challenge.[21]

## IV. *Motion to Vacate*

▮ Defendant David Anderson has moved to vacate a default entered against him. Plaintiff has opposed this motion.

violation and cannot be considered when viewing whether the complaint meets the heightened pleading standard for the deficient training claim.

**19.** *See also Penthouse International, Ltd. v. Meese,* 939 F.2d 1011, 1017 (D.C.Cir.1991) (holding that officials had qualified immunity from suit as appellant did not have a clearly established constitutional right to be free of pressure from the government to respond to allegations that they were selling pornography if no threats of legal sanctions were employed); *Harris v. District of Columbia,* 932 F.2d 10 (D.C.Cir.1991) (finding qualified immunity because officers were not under a clearly established constitutional obligation to obtain medical care for drug overdose victim).

**20.** Plaintiff argues that she need only to establish a *prima facie* case to proceed under Section § 1983 and does not have to disprove a qualified immunity defense. *See* Plaintiff's Opposition to Motion of Defendants Marion Barry, Maurice Turner, Addison Davis and the District of Columbia for Summary Judgment at 16–17. But as noted above, this Circuit requires that the pleading be subject to a heightened standard of specificity.

**21.** Although we do not need to reach whether the officers held a qualified immunity, we note that there is no doubt that failure to train con-stituted a clearly established constitutional violation at the time of the alleged incident. In 1971, this Circuit held that negligent failure to train constituted a constitutional violation for which municipal supervisors could be held liable. *See Carter v. Carlson,* 447 F.2d 358 (1971), *rev'd on other grounds sub. nom. District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). Although the Supreme Court, in *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), held that supervisory liability under Section 1983 required a strong showing: "an affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by petitioners—express or otherwise—showing their authorization or approval of such misconduct," the Court accepted the idea of supervisory liability for negligent training. 423 U.S. at 371, 96 S.Ct. at 604. In 1987, this Circuit joined others in requiring a higher degree of liability than negligence. *See Haynesworth v. Miller,* 820 F.2d 1245, 1261 (D.C.Cir.1987). This Circuit noted that supervisory liability may arise "even absent a pattern of past transgressions, where training has been so clearly deficient that some deprivation of rights will inevitably result absent additional instruction." 820 F.2d at 1261–62. Between 1971 and 1987, therefore, the relevant time for this dispute, it was established in this District that failure to train could result in Section 1983 liability, even if the contours of that duty were unclear. *See Haynesworth,* 820 F.2d at 1260.

**198**

Federal Rule of Civil Procedure 55(c) provides that a default may be set aside for "good cause shown." Local Rule 108(g) requires that a motion to vacate be accompanied by a verified answer presenting a defense sufficient to bar the claim in whole or in part.

The record shows that Metropolitan Police Officer David Anderson was personally served on May 1, 1990. Anderson says that he did not think the papers he received concerned a lawsuit and that he was being sued. *See* Affidavit of David Anderson at 2. While Officer Anderson may not have thought the papers were a summons, he was aware of the pending lawsuit, as Assistant Corporation Counsel Sylvia Larrabee represented to the court on April 4, 1990 that defendant David Anderson told her that he had not been served at that time, and he designated another officer to accept service on his behalf. *See* Status Statement, filed April 4, 1990. When he was served a month later he should not have been surprised. Further, in his affidavit, Anderson says he was notified "in late July or August, 1990" that a default had been entered against him, but he did not file a motion to vacate the entry until September 21, 1990, well over the twenty days following service of a complaint that a defendant would normally have to answer. To accept Officer Anderson's affidavit as "good cause" for the vacating of a entry of default would negate the meaning of the words.

As Officer Anderson has given no reason for his delay in answering and given the possible prejudice that may be borne by the plaintiff due to the late stages of discovery of this case, we decline to vacate the entry of default.

### V. *Summary*

In conclusion, this Court denies the motion to dismiss filed by defendants Leon Faulkner, Martha Faulkner, and Ruth Humbles, dismisses the action against the District of Columbia and Marion Barry, Maurice Turner and Addison Davis in their personal capacities. We also deny Police Officer David Anderson's motion to vacate.

In addition, any claim of constitutional violation, wherever and however asserted that relies on a practice, policy, or custom of not responding to plaintiff's calls for police assistance may not go forward.