493 So.2d 1315 (1986)
Loretta Ross BOYD
v.
Dr. R.H.F. LYNCH and Sharkey-Issaquena Community Hospital.
No. 55775.
Supreme Court of Mississippi.
September 10, 1986.
*1316 George F. Hollowell, Jr., Stan Perkins, Greenville, for appellant.
Fred C. DeLong, Jr., Campbell & DeLong, Greenville, R.E. Parker, Jr., William R. Lancaster, Varner, Parker & Sessums, Vicksburg, for appellees.
Before WALKER, C.J., and PRATHER and ANDERSON, JJ.
PRATHER, Justice, for the Court:
The sufficiency of proof necessary to sustain a cause of action in a medical malpractice suit against a treating "on-call" doctor, and a negligence suit against the hospital and its administrator is the subject of this appeal.
Loretta Ross Boyd filed a suit against Dr. R.H.F. Lynch and the Sharkey-Issaquena Community Hospital, its administrator and trustees, for alleged negligence in connection with the death of Boyd's two-year old son, Jeremy Ross. At the close of plaintiff Boyd's case in chief, Dr. Lynch made a motion for and was granted a directed verdict. Sharkey-Issaquena Hospital put on no defense, but received a unanimous jury verdict in its favor. Appellant Boyd appeals and assigns the following as error:
(1) The trial court erred in granting defendant Dr. R.H.F. Lynch a directed verdict at the close of plaintiff's case.
(2) The trial court erred in refusing to allow Dr. Edward Rose to testify as an expert with regard to hospital care.
(3) The trial court erred in allowing voir dire examination of Dr. Rose to occur in the presence of the jury.
(4) The trial court erred in refusing to allow Alyne Foresman to testify.

I.
On September 7, 1980, at approximately 2:30 a.m., the plaintiff, Loretta Ross Boyd, brought her 29 month old son, Jeremy Ross, to the emergency room at the Sharkey-Issaquena Community Hospital. Dr. R.H.F. Lynch was the physician "on call" for the hospital's emergency room that night.
Mrs. Boyd and the child's grandmother, Mrs. Ross, informed both the licensed practical nurse (LPN) and the nurse's aide that Jeremy would not take water, had swollen glands in the neck, and was having difficulty breathing. After observing the child and obtaining a history from the child's mother and grandmother, LPN Stevens telephoned Dr. Lynch at home and related to him that the child had 103 degree fever, was unable to sleep, would not take water, had swollen glands around the throat, and had "raspy" respiration but good color. Dr. Lynch ordered that the child be admitted to the hospital, and given tests and treatment. Dr. Lynch also instructed the nurse to call him back if the child's condition got worse or if his temperature did not come down.
Jeremy was placed in a hospital room with a baby bed and humidifier. His mother and grandmother stayed with him. The LPN administered a shot of penicillin, gave the child Tylenol and took throat swabs as ordered by the doctor. The child's temperature was taken several times, the last time at 4:30 a.m. At about 5:00 a.m., the grandmother rushed out in the hallway with Jeremy, who had unexpectedly stopped breathing. Dr. Lynch was telephoned immediately by a hospital employee and cardiopulmonary resuscitation was unsuccessfully attempted by the LPN.
The child was pronounced dead upon Dr. Lynch's arrival. The mother filed suit *1317 against the hospital and Dr. Lynch, alleging that both parties were negligent and that such negligence resulted in Jeremy's death.

II.

Negligence as to the Physician

Did the lower court err in granting defendant, Dr. R.H.F. Lynch, a directed verdict at the close of the defendant's case?
When considering a motion for a directed verdict, all evidence in favor of the party against whom the motion is made must be considered as true and evidence of contradiction thereof must not be considered. See, e.g., White v. Hancock Bank, 477 So.2d 265 (Miss. 1985), Hammond v. Grissom, 470 So.2d 1049 (Miss. 1985). This is the standard to be applied by an appellate court in evaluating a trial court's action in granting a directed verdict. This Court now addresses the plaintiff's proof in support of her claim that the general practitioner, Dr. Lynch, was negligent.
For expert proof of the standard of care for a general practitioner, the plaintiff offered the expert testimony of Dr. Edward Rose of Red Bay, Alabama, who testified that Dr. Lynch was negligent in not acquiring more information about the child before attempting to diagnose and treat the illness.
Dr. Rose testified that Dr. Lynch's only deviation from the standard of practice was that he should have obtained a pulse rate, a respiratory rate, and a better description of the child's general condition. On the other hand, however, Dr. Rose did admit that if Dr. Lynch obtained sufficient information from a nurse and had grounds to reasonably rely upon the competence of that nurse to report anything out of the ordinary, the doctor would not violate the standard of medical care for general practitioners. In the use of the term "nurse," Dr. Rose defined nurse as a registered nurse who had been known to him for at least a six month period.
Dr. Lynch had only known the licensed practical nurse Stevens for one month. The plaintiff contends that it is highly unlikely that a doctor could justifiably establish confidence that a nurse would accurately examine and report all symptoms of a patient within such a short time, and that this alone was sufficient to create a jury issue on negligence.
In the opinion of Dr. Rose, the cause of the child's death was epiglottitis[1], but he admitted the disease to be a very rare and an extreme form of respiratory ailment which he has never seen in twelve years of medical experience. The treating doctor, Dr. Lynch, likewise testified that in forty years of active medical practice he has never seen a case of epiglottitis but opined that what happened to the child after 5:00 a.m. would have to be classified as a sudden, rare, unexplained event. The hospital requested an autopsy, but the family refused.
The testimony of Dr. Lynch and other hospital personnel was that the licensed practical nurse was highly competent and deserving of the confidence placed in her by Dr. Lynch.
A statement of the substantive law relating to a physician's duty is in order. That duty has been enunciated in Hall v. Hilbun, 466 So.2d 856 (Miss. 1985) as follows:
In the care and treatment of each patient, each physician has a non-delegable duty to render professional services consistent with that objectively ascertained minimally acceptable level of competence he may be expected to apply given the qualifications and level of expertise he holds himself out as possessing and given the circumstances of the particular case. The professional services contemplated within this duty concern the entire caring process, including but not limited to examination, history, testing, diagnosis, *1318 course of treatment, medication, surgery, follow-up, after-care and the like.
Emphasis is given the proposition that physicians incur civil liability only when the quality of care they render falls below objectively ascertained minimally acceptable levels.
Under Mississippi law the standard by which physicians are judged has been expanded beyond the locality in which they actually practiced medicine. Hall v. Hilbun, supra. King v. Murphy, 424 So.2d 547 (Miss. 1982). Recognizing that a physician possesses or has "medical knowledge commonly possessed or reasonably available to minimally competent physicians in the same specialty or general field of practice throughout the United States," a national standard of care was adopted. Hall v. Hilbun, supra at p. 871.
With the standard of care of a general practitioner in mind, the Court analyzes the plaintiff's duty in the trial. A plaintiff is generally required to present expert medical testimony, first, identifying and articulating the requisite standard of care under the circumstances, and thereafter, establishing that the defendant physician or hospital failed in some causally significant respect to conform to the required standard of care. Hammond v. Grissom, 470 So.2d 1049 (Miss. 1985); Hardy v. Brantley, 471 So.2d 358 (Miss. 1985); Hall v. Hilbun, 466 So.2d 856 (Miss. 1985); Kilpatrick v. Mississippi Baptist Medical Center, 461 So.2d 765 (Miss. 1984).
The testimony of Dr. Edward Rose was the only medical proof offered by appellant in an attempt to impose liability upon Dr. Lynch. The record shows that there were only two doctors in Rolling Fork, Mississippi subject to "on call" night duty at the hospital, and they alternated night duty every other night. The number of registered nurses and other personnel on night duty at this twenty-nine bed hospital is not known. It is not reflected that any other more trained personnel were available at this hour from whom more trained observations could be acquired. The expert witness for the plaintiff admitted that if Dr. Lynch was reasonable in relying upon the report of his nurse, he had done no wrong.
Also absent in this record is any proof of causal connection between the alleged acts of negligence of the doctor and the cause of death of the infant, an essential ingredient in a negligence case.
The plaintiffs' case failed to show that the doctor defendant failed to act in accord with a reasonable standard of care of a general practitioner that resulted in the child's death. Looking to the record the trial court's award of a directed verdict for Dr. Lynch is proper in this case.

III.

Negligence as to the Hospital

Did the lower court err in refusing to accept Dr. Rose as an expert with regard to hospital care in Rolling Fork, Mississippi?

A.
At the outset it is beneficial to make some general observations concerning the principles of hospital liability.
This Court has previously defined medical malpractice as the "legal fault by a physician or surgeon." Hall v. Hilbun, 466 So.2d 856 (Miss. 1985). The term "physician" was said "to include all persons possessing an M.D. and providing medical or surgical services." Hall, supra, 866, n. 3. Therefore, it is worthy to note that hospitals are not liable for medical malpractice liability since a hospital is not a person licensed as a physician, Hall, supra. However, in Hardy v. Brantley, 471 So.2d 358 (Miss. 1985) this Court recognized that a hospital may be liable for physical harm caused by a doctor it employs by contract to provide medical services or for breach of implied warranty to a patient.
A hospital may also be liable under other legal theories, such as negligence, contract, or expressed warranty. P. Lasky, *1319 11B Hospital Law Manual, Principles of Hospital Liability, (1986).[2]
In order to prevail in a suit based on the negligence of a hospital or of an employee whose liability will be imputed to the hospital, the plaintiff must satisfy four elements. First, it must be shown that the defendant had a duty to act in accordance with a standard of reasonable care so as to prevent injury to a foreseeable plaintiff. Second, the plaintiff must demonstrate the defendant's failure to conform to the applicable standard of care. This element is referred to as the breach of duty. Third, the plaintiff must prove that the defendant's breach of duty was the proximate cause of the plaintiff's injury... .
Finally, the plaintiff must show that he or she suffered actual harm or injury as a result of the defendant's negligent conduct.
Id. § 1-1, 1.
A hospital may be subject to liability for its own acts of negligence toward patients and others, but also, it may be liable where the negligence of its health care personnel is imputed to the hospital under an agency theory.

B.
Under the theory of agency, the Sharkey-Issaquena Community Hospital is charged with negligence of the nurses and staff employees on duty in the emergency room. The alleged negligent acts charged were the failure: to use reasonable medical skill, to send to another medical facility with adequate staff, to consult nursing supervisor or another doctor after learning that Dr. Lynch was not coming in, to perform proper diagnostic tests, to use reasonable care that conditions required, to report symptoms to nursing supervisor or another doctor, and to follow community, state, and regional medical standards in the emergency room care and treatment of Jeremy Ross.
For proof of the above allegations, the plaintiff offered the testimony of Dr. Rose.
The trial court allowed Dr. Rose to render expert opinion relative to the standard of care of physicians, but restricted him from expressing an opinion on hospital or nursing care in Rolling Fork, Mississippi. The basis upon which the trial court denied such testimony was the following:
Dr. Rose was on the staff of the Red Bay Alabama Hospital which is east of Fulton, Mississippi near the Mississippi-Alabama line containing 33 hospital beds. Dr. Rose admitted upon questioning that he was "caught by surprise" that an attempt would be made to qualify him to give expert testimony relative to the hospital care by licensed practical nurses and registered nurses. Touching his qualifications as to the requisite knowledge required, in order to enable him to testify, appellee argues that Dr. Rose stated: (1) he had no knowledge of qualifications required of LPN's or RN's in Rolling Fork; (2) he was unaware of the number of RN's or LPN's in the drawing area of Rolling Fork; (3) he has never been in a hospital in Mississippi; (4) he was unaware of the qualifications of hospital administrators in Rolling Fork; (5) he was not even aware of the number of shifts of nurses at the Sharkey-Issaquena Community Hospital; (6) he was unfamiliar with the requirements, either statutory or otherwise of the State of Mississippi as to the number of RN's required to be on duty; (7) he did not "know anything about any of the standards promulgated by the State of Mississippi or this hospital; (8) he has never practiced in any town in Mississippi; and (9) he admitted when questioned "and you really don't know what the standards of medical practice are in these towns" to which he answered: "I guess the answer to that would be no."
The decision of whether a witness is qualified to give expert opinion testimony is, of course, within the sound discretion of *1320 the trial judge and will not be disturbed on appeal unless the discretion is abused. Hardy v. Brantley, 471 So.2d 358 (Miss. 1985); Hollingsworth v. Bovaird Supply Co., 465 So.2d 311 (Miss. 1985).
The trial court was proper in sustaining the objection to Dr. Rose's testimony as expert on the standards of practice of hospitals or nurses in Mississippi.

IV.
The lower court erred in allowing voir dire examination of Dr. Rose in the presence of the jury.
Whether the jury should be excused during argument as to the admissibility of evidence or while offers of proof are being made, rests in the discretion of the court, but the better practice is to excuse the jury at such times. 88 C.J.S. Trials § 84 (1955).
The appellant contends that the voir dire examination of Dr. Rose regarding hospital care held in the presence of the jury was highly prejudicial to plaintiff's case in that Dr. Rose was disqualified in front of the jury  thus making the plaintiff's case against the hospital appear weak and without merit.
At the time Dr. Rose was examined, no objection was made by appellant to the voir dire of Dr. Lynch before the jury, although appellee Lynch did request that it be done in camera. Any objection was waived and the trial court did not abuse its discretion in allowing the second voir dire before the jury in the absence of a timely objection.
It appears that the trial court's ruling was a reasonable exercise of its sound discretion in this regard.

V.
The court erred in refusing to allow Alyne Foresman to testify.
It appears from the record that counsel for appellees were not notified until Friday, August 5, 1983 before the Monday trial date August 8, 1983, that appellant intended to call Alyne Foresman to testify as an expert witness on nursing care standards.
Under the dictates of Huff v. Polk, 408 So.2d 1368 (Miss. 1982), (failure to disclose names of three expert witnesses immediately prior to trial violated discovery statute requiring supplemental responses to interrogatories and noncompliance with the statute was not cured by trial court's offer of continuance) and Square D. v. Edwards, 419 So.2d 1327 (Miss. 1982) (plaintiff had duty to supplement answer to interrogatory requesting a substance of opinions as to which experts were expected to testify, and it was error to admit expert testimony regarding defects where such defects were not cited in supplemental answers to such interrogatory), it appears that the trial court's decision to exclude Foresman's testimony was proper under the circumstances and should be affirmed.
Although the death of Jeremy Ross was truly tragic, the record in this case and arguments set forth by plaintiff's counsel failed to meet the burden of proof required in negligence suits against the doctor or the Sharkey-Issaquena Community Hospital. It appears that the directed verdict in favor of Dr. Lynch and the jury verdict in favor of Sharkey-Issaquena Community Hospital should be affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
ROBERTSON, J., not participating.
NOTES
[1] Definition: Inflammation of the lidlike cartilaginous structure overhanging the entrance to the larynx and serving to prevent food from entering the larynx and trachea while swallowing.
[2] Excluded from this discussion is any governmental immunity theory or waiver of immunity to the extent of its insurance coverage under Miss. Code Ann. § 41-13-11.