933 So.2d 1043 (2006)
Gerald LANDER, Appellant
v.
SINGING RIVER HOSPITAL SYSTEM; Ocean Springs Hospital, Appellee.
No. 2004-CA-02345-COA.
Court of Appeals of Mississippi.
July 18, 2006.
*1044 Susannah Ross Cooley, David A. Bowling, attorneys for appellant.
Howard Lamoyne Smith, Brett K. Williams, Thomas L. Musselman, Pascagoula, attorneys for appellee.
Before LEE, P.J., SOUTHWICK and ISHEE, JJ.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. Gerald Derrick Lander filed suit against Ocean Springs Hospital and Singing River Hospital System pursuant to the Mississippi Tort Claims Act due to injuries sustained while Lander was being treated at Ocean Springs Hospital (the Hospital). Lander alleged that the Hospital's staff negligently managed his intravenous therapy, resulting in sepsis, surgery and nerve damage.
¶ 2. Pursuant to the Mississippi Tort Claims Act, a bench trial was held. See Miss.Code Ann. Sections 11-46-1 through 23 (Rev.2002). After considering the evidence and the arguments submitted by counsel, the trial court entered a judgment in favor of the Hospital.
*1045 ¶ 3. It is from this ruling that Lander appeals arguing the following, which we quote verbatim:
(1) whether the deferential standard of review of the trial judge's findings is grounds to affirm the ruling that there were no deviations from the standard of care where multiple deviations are established by simply comparing the care documented by the Hospital to the admitted standards for that care; (2) whether the trial court was manifestly wrong and clearly erroneous in finding that there was no violation of the requirements that the tubing and site location be changed every seventy-two hours; (3) whether the trial court's failure to find that the IV which caused the infection had been in the antecubital fossa long over the seventy-two hour limit was manifestly wrong and lacked substantial evidentiary support; (4) whether the trial court's ruling ignored the gross misconduct of the nurse tending to Gerald Lander once the problem with the IV surfaced; and (5) whether the trial judge's ruling that there was no injury caused by deviations from the standard of care lacks substantial evidentiary support, is manifestly wrong and is erroneously based on evidence which merely pertained to the extent of the injury.
¶ 4. The thrust of Lander's five assignments of error can be framed as follows: whether the trial court's findings of fact and conclusions of law are manifestly wrong and clearly erroneous. Finding no error, we affirm.

FACTS
¶ 5. On August 21, 2000, Lander sought emergency medical treatment at Ocean Springs Hospital for abdominal pain. Lander was admitted to the Hospital and remained there until he was discharged on September 8, 2000. Lander's pain was attributed to ulcers, and as part of his treatment he received an intravenous line.
¶ 6. Throughout his treatment Lander received four IVs. The first was inserted into his right antecubital fossa, or crease in the inner elbow of the right arm. This IV was removed on August 24, when a second IV was inserted into Lander's left forearm. This IV was removed the next day and a third IV was inserted into Lander's left inner arm, where it remained until August 26. Lander's fourth IV was placed in his upper right arm on August 26. This IV remained in place for approximately ninety-six hours.
¶ 7. At 8:25 the morning of August 30, Jennifer Green, one of the Hospital's registered nurses, made a note on Lander's chart that his IV site was slightly red. Green testified that at 10:15 that morning Lander again complained about his arm, which was red and sore when touched. Green testified that she removed the IV and unsuccessfully attempted to reinsert an IV in another area. Green, as well as other nurses from the Hospital, testified that she had previously had difficulty inserting an IV in Lander. At 1:30 that afternoon, Lander registered a fever of 100.9 degrees. At 6:00 p.m. Lander registered a fever of 103.6, and Green contacted Dr. John McKee, who was making rounds at the Hospital. The following day, Dr. Okechukwu Ekenna diagnosed Lander with right antecubital vein thrombosis and abscesses.
¶ 8. On September 1, Lander underwent surgery to drain the abscess and reconstruct the vein in his right arm. Lander filed suit against the Hospital, alleging that he sustained nerve damage due to the abscess and subsequent surgery.

STANDARD OF REVIEW
¶ 9. "A circuit court judge sitting without a jury is accorded the same deference *1046 with regard to his findings as a chancellor," and the judge's findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence. Puckett v. Stuckey, 633 So.2d 978, 982 (Miss.1993). This Court will respect the lower court's findings of fact when they are supported by reasonable evidence in the record and are not manifestly wrong. Allied Steel Corp. v. Cooper, 607 So.2d 113, 119 (Miss.1992). Additionally, when sitting as the finder of fact, the trial judge has the sole authority for determining the credibility of witnesses. Yarbrough v. Camphor, 645 So.2d 867, 870 (Miss.1994).

DISCUSSION OF THE ISSUE

I. ARE THE TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW MANIFESTLY WRONG AND CLEARLY ERRONEOUS?
¶ 10. In a medical malpractice action, the plaintiff bears the burden of proof and must show the defendant's negligence by a preponderance of the evidence. Powell v. Methodist Health Care Jackson Hosps., 856 So.2d 353, 355(¶ 11) (Miss.Ct. App.2003). To succeed in his case, Lander must prove four elements. First, he must prove that the defendant had a duty to act in accordance with "a standard of reasonable care so as to prevent injury to a foreseeable plaintiff." Boyd v. Lynch, 493 So.2d 1315, 1319 (Miss.1986). Second, the plaintiff must then prove that the defendant failed to conform to the appropriate standard of care, also known as "the breach of duty" to the plaintiff. Id. Third, the plaintiff must prove that this breach proximately caused his injury. Id. Finally, the plaintiff must prove that he suffered actual harm or injury as a result of the defendant's negligent conduct. Id.
¶ 11. The trial court found that Lander failed to prove that the Hospital breached its duty to him. Lander points to the Hospital's "Peripheral IV Therapy Clinic Practice Guideline," which instructs the nurse to "[p]erform site care and tubing change (primary and secondary) [every] 72 hrs." Lander argues that the Hospital was negligent in leaving IV number four in his arm for approximately ninety-six hours, resulting in infection and necessitating surgery.
¶ 12. We disagree. There was testimony that nurses must use discretion in deciding whether to remove an IV, as the veins of some patients, such as Lander, were difficult to puncture. Tom Meyer, Lander's expert witness on nursing, testified in his deposition that there were "circumstances where a nurse would be prudent to change [an IV] out at seventy-two hours, and there [were] circumstances where a nurse might find it prudent to leave it in as long as ninety-six [hours]." Meyer agreed that such a decision would be left to the judgment of the nurse.
¶ 13. Mandy Lewis also testified as an expert in the field of nursing. Lewis noted that the nurses were repeatedly unable to insert the necessary IVs into Lander's arms, and the nurses had to use a smaller gauge needle than was usually used on patients of Lander's age, health and weight. Lewis further testified that a nurse should not automatically remove an IV simply because it had been used for seventy-two hours, as futile attempts to reinsert the IV would cause patient discomfort. During his deposition Dr. Ekenna testified that seventy-two hours was a guideline, subject to the patient's veins and the nurse's site inspections and site care.
¶ 14. Lander argues that the nurses failed to document site care and tubing changes, thus it should be presumed that such care did not occur. This argument *1047 lacks support in the law as well as the facts of this case. Green testified that the nurses would often change the tubing on the IV and mark the tubing with a bright marker indicating the time and date that the new tubing was installed. Green testified that every tube change was not indicated on patient charts because the nurses would use the colors on the tubing to indicate when the tubing should be replaced. The trial court found this testimony to be persuasive.
¶ 15. Contending that the record supports a finding that IV number four was the source of the infection, Lander next argues that the court erroneously found that IV number one was the source of the infection. Dr. Brian Pitre, who operated on Lander's vein, testified that infections usually originate from sites "further upstream." Dr. William Knight, Lander's physiatrist, testified that venous drainage "typically goes up as opposed to down." Dr. Ekenna stated during his deposition that, depending on the patient's ability to fend off infection, abscesses usually appear as early as two days or as late as two weeks after a puncture. Dr. Ekenna further testified that it "would be very unusual... unless you injected dirt" for an abscess such as Lander's to develop within a matter of hours. We cannot agree that the court's finding that the abscess resulted from IV number one, which was removed six days prior to the appearance of the abscess, lacks substantial, credible, reasonable evidence.
¶ 16. Lander further argues that, even if IV number one produced the abscess, the court erred in failing to find that the Hospital was negligent in treating the infection. This assertion is simply not supported by the record before this Court. Dr. Ekenna testified that both phlebitis and abscesses are risks of intravenous therapy. Nurse Green's notes indicate that when she removed the fourth IV, the site had yellow drainage, she applied a band-aid and elevated Lander's arm in accordance with her training and Hospital policy. Lander argues that the drainage should have alerted Green to the presence of an infection. Dr. Randy Roth testified that the drainage was probably serous fluid and not pus, as pus tends to be white and serous fluid is yellow. Dr. Roth also testified that serous fluid is not indicative of an infection. Dr. Roth testified that infection is a risk of IV therapy, and the development of an infection does not indicate a deviation from the standard of care. The record supports the trial court's conclusions, and we decline to find that the trial court's findings lack credible evidence.
¶ 17. The trial court concluded that Lander had failed to prove that the treatment he received was the proximate cause of his alleged injuries. Dr. Knight was the only witness who attributed Lander's pain to the IV treatment at the Hospital, and this was based upon Lander's assertion that he had suffered a nerve injury because the Hospital staff left the IV in his arm in excess of seventy-two hours.
¶ 18. Notably, Lander was involved in an automobile accident in 2004 and sought treatment from Dr. Cesar Rocca, a physician in Alabama. Lander did not inform Dr. Rocca of the pain, tingling and numbness which he attributed to the surgery, and Dr. Rocca's examination of Lander's arm did not reveal any such symptoms. The record reflects that Lander has a long history of securing pain medications from multiple doctors at the same time. Numerous doctors indicated that Lander exhibited the behavior of a person who sought drugs for non-medical reasons. As the trier of fact, a trial judge sitting without a jury determines the credibility of witnesses. Yarbrough, 645 So.2d at 870. *1048 The trial court obviously found Lander's testimony to be unpersuasive, and such a finding rested within its discretion.
¶ 19. We cannot agree that the trial court's findings lack substantial, credible evidence. As such, we affirm.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.