# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-IA-00494-SCT

*ST. DOMINIC-JACKSON MEMORIAL HOSPITAL*

*v.*

*APRIL NEWTON AND TRAVIS NEWTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/21/2020 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| TRIAL COURT ATTORNEYS: | GERALD PATRICK COLLIER |
| | STEPHEN P. KRUGER |
| | LOUIS G. BAINE, III |
| | THURMAN LAVELLE BOYKIN, III |
| | JOHN ERNEST WADE, JR. |
| | TAMMYE CAMPBELL BROWN |
| | ROBERT LANE BOBO |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN ERNEST WADE, JR. |
| | M. PATRICK McDOWELL |
| | SHELDON G. ALSTON |
| | ROBERT LANE BOBO |
| ATTORNEY FOR APPELLEES: | GERALD PATRICK COLLIER |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND RENDERED - 04/07/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.    This is an interlocutory appeal from a circuit court order denying summary judgment to a hospital defendant in a medical-malpractice action.  The plaintiffs, April and Travis Newton, alleged that St. Dominic-Jackson Memorial Hospital had a duty to "exercise reasonable care in preventing foreseeable injuries to its patients" by requiring St. Dominic

to review certain radiation treatments received by April Newton at its facility. On appeal, St. Dominic contends Newton's physician was a third party and that it had no duty to second guess the activities of a patient's attending physician.[1] We agree that Mississippi law does not impose a duty on a hospital to require peer review of a treatment plan before allowing a doctor and patient to use its facilities, and no actionable negligence was alleged of the hospital or its employees; so we reverse the trial court's denial of summary judgment and render a judgment in favor of St. Dominic.

## FACTS

¶2. April Newton suffered from a skin condition described in the complaint as advanced severe stage hidradenitis suppurativa, which "involv[ed] the entire lower abdominal area, perineum, buttocks, and thighs." Newton's hidradenitis suppurativa resulted in irritation and chronic "shallow wounds and sinus tracts with a foul smelling discharge." As an alternative to skin excision and grafting, Newton's doctor, Sidney Albert Johnson Jr., treated Newton's skin condition with radiation at St. Dominic. At first, the treatment helped with Newton's condition, but she later developed painful, chronic skin ulcerations. Newton and her husband filed suit against Dr. Johnson, his clinic, and St. Dominic. Newton's expert, Dr. Phillip

---

[1] *See* **Porter v. Pandey**, 423 So. 2d 126, 127 (Miss. 1982), *overruled in part by* **Hardy v. Brantley**, 471 So. 2d 358, 373 (Miss. 1985). A hospital may be liable for the negligence of nominally independent physicians under certain circumstances not alleged to be present here, i.e., "where the patient engages the services of the hospital without regard to the identity of a particular physician and where as a matter of fact the patient is relying upon the hospital to deliver the desired health care and treatment[.]" **Gatlin v. Methodist Med. Ctr., Inc.**, 772 So. 2d 1023, 1027-28 (Miss. 2000) (quoting **Hardy v. Brantley**, 471 So. 2d 358, 369 (Miss. 1985), *superseded on other grounds by statute as noted in* **Brown v. Delta Reg'l Med. Ctr.**, 997 So. 2d 195, 197 (Miss. 2008)).

Beron, opined that Newton's doctor had prescribed an excessive radiation regimen and that St. Dominic had failed to use reasonable care in its duty "to develop, establish, and enforce certain standards in the operation of its Hospital to insure safe and reasonably adequate care and treatment."

¶3. St. Dominic brought a motion for summary judgment, which the circuit court denied. St. Dominic then petitioned this Court for permission to take an interlocutory appeal, which was granted.

## ISSUES

¶4. St. Dominic enumerates two issues:

1. Whether St. Dominic owed Plaintiffs a duty to oversee their chosen physician's medical treatment of Mrs. Newton to insure against his alleged negligence.

2. Whether St. Dominic's alleged failure to adequately oversee Plaintiffs' chosen physician's medical treatment of Mrs. Newton proximately caused Plaintiffs' alleged injuries.

## DISCUSSION

¶5. Since the issues are interrelated, we will discuss them together. Ultimately, we conclude that Newton failed to show that St. Dominic breached a duty of care owed to her.

¶6. A hospital is generally not liable for the negligence of independent doctors treating patients on its premises, but it "may be liable for its own negligence and the negligence of its employees." *Clark v. St. Dominic-Jackson Mem'l Hosp.*, 660 So. 2d 970, 972 (Miss. 1995) (citing *Boyd v. Lynch*, 493 So. 2d 1315, 1318-19 (Miss. 1986)). And "[a]s is true of all negligence actions, a hospital must exercise reasonable care in preventing foreseeable

3

injuries to foreseeable plaintiffs." *Id.* (citing *Swan v. I.P., Inc.*, 613 So. 2d 846, 856 (Miss. 1993); *Boyd*, 493 So. 2d at 1319).

¶7.     St. Dominic frames the question on appeal as whether a hospital must require peer review of a treatment plan before permitting a patient to be treated at its facilities. Newton does not agree with this framing of her case, but our review is complicated by her failure to articulate specific allegations of negligence against the hospital. The Newtons' expert, Dr. Beron, did not distinguish between St. Dominic and the other defendants in his affidavits and expert designation; he simply ascribed all of the negligent acts to all of the defendants. In his deposition, however, Dr. Beron explained that he found the hospital's "department policies and procedures" wanting. To be clear, Dr. Beron did not review the hospital's policies and procedures; he said that he was unaware of any policies and procedures at St. Dominic and that the circumstantial evidence suggested there were none or that they were insufficient. Dr. Beron observed that there were no notations in the medical records documenting the sort of discussions he would have expected if adequate policies and procedures had been in place. Specifically, Dr. Beron suggested that two hospital employees, the physicist and the dosimetrist, should have been in a position to discuss the treatment with Newton's physician if the proper policies and procedures had been in place.

¶8.     Dr. Beron did testify in a conclusory fashion that the lack of procedures was a "direct cause of the breach," but he failed to identify any specific duty that was breached by hospital employees. Dr. Beron faulted the hospital for not conducting "chart rounds," when hospital employees would have reviewed and discussed Newton's treatment plan and documentation

4

on a weekly basis. He also faulted the hospital for not requiring peer review by another physician.[2]  But, as noted above, under Mississippi law, hospitals do not have a duty to supervise physicians practicing at their facilities.

¶9.    Dr. Beron did not testify that the hospital employees should have recognized Dr. Johnson's treatment regimen as excessive.  Instead, Dr. Beron suggested that if hospital employees had regularly talked to Dr. Johnson about Newton's treatment, those discussions might have led Dr. Johnson to change his mind about the radiation dose he had prescribed. But Dr. Beron ultimately admitted that he "had no idea what Dr. Johnson would have done" had the hospital had the policies in place he says were required.  Dr. Beron further admitted he did not have "any specific criticisms of the [hospital employees] in terms of: Hey, they put this plan together and they should have done X or they should have Y. It's more a global criticism of the department in general in terms of they allowed this patient to be placed in harm's way needlessly."  Dr. Beron's testimony simply fails to establish that St. Dominic breached a duty owed to Newton and that the breach proximately caused her injuries.

¶10.    On appeal, Newton also contends that St. Dominic breached its duty to obtain informed consent for the treatment due to a faulty consent form, but her arguments on appeal mischaracterize Dr. Beron's testimony.  In fact, Dr. Beron did not fault the hospital's consent form.  Instead, he testified that informed consent was "a process" of discussions with the treating physician, and his complaints about the hospital's consent form depended on first

_____

[2] St. Dominic argues that, in fact, a second physician did review Newton's treatment plan.  But it is not necessary to delve into the sufficiency of the peer review because St. Dominic had no duty to require peer review in the first place.

5

recognizing that the prescribed treatment was (as Dr. Beron opined) excessive. Dr. Beron testified that the hospital consent form "is only useful if you're within the standard of care[. I]f you're using doses that are not standard doses, and describing side effects that don't take place in the literature with treatment doses that are standard and recommended then—then I'm not sure about how useful this document is." Dr. Beron also testified that informed consent required

> conversations and documentation of those conversations with [Newton] that talked about the . . . likelihood of these problems happening with the technique and dose that he was going to use as opposed to more standard treatment such as that in the literature in which these don't occur, and should document his reason why he needed to go so far above the recommended doses.

Thus, Dr. Beron's contentions about informed consent fault the treating physician or depend on the medical judgment of a physician and do not implicate the hospital's employees.

¶11.   Next, Newton presents the novel argument that radiation therapy is an "inherently dangerous activity" such that the hospital could not delegate the duty of deciding doses to an independent contractor, i.e., Newton's physician. This Court has explained:

> It is well settled that one who contracts with an independent contractor to perform certain work or service which is not illegal, dangerous or harmful, is not liable for torts committed by him. Where, however, the work or service to be performed in itself entails the commission of some illegal, dangerous or tortious act, the rule obviously cannot apply, because in such instance the principal and the independent contractor both play an integral part, are both proximate causes, of whatever harm ensues.

***Hester v. Bandy***, 627 So. 2d 833, 841 (Miss. 1993) (citations omitted).

¶12.   Newton makes no effort to advance this argument beyond the bare assertion that radiation treatment is inherently dangerous. But if the Court were to accept this theory, it

6

would swallow up the longstanding rule of law in Mississippi that hospitals are generally not required to supervise independent physicians who practice there. *See Hardy*, 471 So. 2d 358. If radiation therapy is inherently dangerous, it would be hard to justify not finding many other medical treatments to be inherently dangerous as well.

¶13.    As other courts have said, it is the physician, not the hospital, who owes the primary duty to provide for the treatment of the patient. *Ests. of Milliron v. Francke*, 793 P.2d 824, 827 (Mont. 1990).  Apparently, a few states have adopted the nondelegation rule as to emergency room physicians. *See Simmons v. Tuomey Reg'l Med. Ctr.*, 533 S.E.2d 312, 318 (S.C. 2000) (noting that Alaska, Florida, and New York courts had applied the nondelegation doctrine to emergency room physicians, though Alaska's legislature largely abrogated the decision through statute).  But commentators have pointed out that what is or is not a nondelegatable duty comes down to a public policy decision.  *See, e.g.*, Martin C. McWilliams, Jr. & Hamilton E. Russell, III, *Hospital Liability for Torts of Independent Contractor Physicians*, 47 S.C. L. Rev. 431, 454 (1996) ("[N]ondelegable duties established by common law are reflections of particularly significant public policy, as perceived by the courts.").  The vast majority of jurisdictions have declined to adopt the nondelegable duty doctrine to physicians practicing in hospitals, and those that have have limited it to the emergency room context. *See id.*  As the Ohio Supreme Court put it, attempts to apply the nondelegable duty doctrine to doctors practicing in hospitals "represent misdirected attempts to circumvent the necessity of proving agency by estoppel, and confuse the proper scope of a hospital's duty in selecting competent physicians . . . ." *Albain v. Flower Hosp.*, 553

7

N.E.2d 1038, 1047 (Ohio 1990) (footnote omitted), *overruled on other grounds by **Clark v. Southview Hosp. & Fam. Health Ctr.***, 628 N.E.2d 46 (Ohio 1994). We find the nondelegable duty doctrine inapplicable.

¶14. Finally, Newton presents a series of arguments regarding alleged negligence per se. For example, she claims the hospital was negligent per se because "it can be argued" that St. Dominic "allowed" Newton's doctor to commit simple assault against her in violation of Mississippi Code Section 97-3-7(1)(a) (Rev. 2020). She makes a similar argument regarding hospital regulations requiring the governing body of a hospital to "establish controls that are designed to insure the achievement and maintenance of high standards of professional ethical practices," citing the "The Minimum Standards of Operation for Mississippi Hospitals" Rule 41.6.15. She also cites Rule 41.7.9, which states that "The medical staff should participate in continuous study and evaluation of factors relating to patient care in the hospital's internal environment. This should include participation in the development of hospital policies and procedures in-so-far as they affect patient care." And Rule 41.32.1 states: "Hospitals rendering outpatient services shall have effective policies and procedures relating to the staff, functions of the service, and outpatient medical records and adequate facilities in order to assure the health and safety of the patients." As noted above, Dr. Beron did not testify that St. Dominic had no policies and procedures in place, just that he was not aware of them and that it did not appear from Newton's medical records that the procedures he felt were necessary had been followed if they had existed.

8

¶15. Newton also cites Medicare regulations relating to nuclear medicine services, which according to her, required the hospital "to meet the needs of its patients in accordance with acceptable standards of practice" and have a governing body that ensures "that the services performed under a contract are provided in a safe and effective manner."

¶16. Assuming these regulations applied to Newton, who was not a Medicare patient, Newton's arguments present an opportunity for this Court to note that there are common-sense limitations to the negligence per se doctrine. As noted by the Restatement (Second) of Torts § 402A cmt. j. (1965), "[t]he decision to adopt from a statute a standard of care to be applied in determining common law negligence is 'purely a judicial one, for the court to make.'" *McNeil Pharm. v. Hawkins*, 686 A.2d 567, 579 (D.C. 1996) (quoting *Rong Yao Zhou v. Jennifer Mall Rest., Inc.*, 534 A.2d 1268, 1274 (D.C. 1987)). "In fact, a court may decline to apply negligence per se to a particular case 'if sufficient policy considerations militate against it.'" *Id.* (quoting *District of Columbia v. White*, 442 A.2d 159, 164 (D.C. 1982)). And, crucially, the statute in question "must . . . 'impose specific duties on the defendant.'" *Id.* (quoting *White*, 442 A.2d at 164). Negligence per se applies when a statute sets out a "positive and definite standard of care" but not when it merely "contains a general, abstract description of a duty." *Sikora v. Wenzel*, 727 N.E.2d 1277, 1280 (Ohio 2000). None of the regulations Newton cites are sufficiently definite to support a finding of negligence per se.

¶17. Ultimately, we conclude that St. Dominic had no duty to supervise Newton's physician and that the Newtons have shown no negligence by St. Dominic or its employees.

9

Thus, we reverse the trial court's denial of summary judgment and render a judgment in favor of St. Dominic.

¶18. **REVERSED AND RENDERED.**

**RANDOLPH, C.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶19. April Newton was treated with radiation therapy at St. Dominic-Jackson Memorial Hospital's cancer center for a benign skin condition affecting her lower abdomen, groin, and thighs. The radiation dose that Newton received had been ordered by Dr. Sidney A. Johnson, Jr. Newton claims that, because the radiation dosage was excessive, she has suffered severe damage to her skin and underlying tissues including multiple large, open, and permanent wounds that must be packed with gauze three times every day. Newton's radiation-induced injuries have necessitated numerous hospital visits for painful debridements and other unpleasant treatments. She averred in her deposition that she no longer can work or care for her family and that she has sought pain management treatment to cope with the severe pain caused by living with a substantial number of open wounds that will not heal.

¶20. In response to St. Dominic's motion for summary judgment, Newton presented expert testimony that its radiation team should not have followed Dr. Johnson's radiation prescription blindly but that the relevant standard of care required St. Dominic to have accounted for physician error by having and following adequate safety and quality assurance policies and procedures. According to Newton's expert, because the medical literature did

10

not support the radiation dose prescribed by Dr. Johnson, a reasonable probability existed that the dosage error would have been detected with adequate safety mechanisms.

¶21.    This Court finds that St. Dominic was entitled to summary judgment. With respect, I disagree. Because the majority omits the applicable standard of review, I note that we apply *de novo* review to a trial court's denial of summary judgment. **Miss. Baptist Med. Ctr., Inc. v. Phelps**, 254 So. 3d 843, 844 (Miss. 2018) (citing **Leffler v. Sharp**, 891 So. 2d 152, 156 (Miss. 2004)). The movant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "All evidence will be viewed in the light most favorable to the nonmoving party." **Phelps**, 254 So. 3d at 845 (citing **Est. of Northrop v. Hutto**, 9 So. 3d 381, 384 (Miss. 2009)).

¶22.    Because a medical malpractice plaintiff has the burden of proof at trial, that party bears the burden of production on summary judgment. **Johnson v. Pace**, 122 So. 3d 66, 68 (Miss. 2013) (citing **Palmer v. Biloxi Reg'l Med. Ctr., Inc.**, 564 So. 2d 1346, 1355 (Miss. 1990)). To survive summary judgment, the plaintiff must produce "supportive evidence of *significant* and *probative* value . . . ." **Palmer**, 564 So. 2d at 1355. "In most lawsuits against hospitals, the issue of negligence involves the determination of an applicable professional standard of care." **Univ. of Miss. Med. Ctr. v. Pounders**, 970 So. 2d 141, 148 (Miss. 2007). This Court has held that

> In order to prevail in a suit based on the negligence of a hospital . . . the plaintiff must satisfy four elements. First, it must be shown that the defendant

had a duty to act in accordance with a standard of reasonable care so as to prevent injury to a foreseeable plaintiff. Second, the plaintiff must demonstrate the defendant's failure to conform to the applicable standard of care. This element is referred to as the breach of duty. Third, the plaintiff must prove that the defendant's breach of duty was the proximate cause of the plaintiff's injury . . . .

***Boyd v. Lynch***, 493 So. 2d 1315, 1319 (Miss. 1986) (quoting P. Lasky, 11B Hospital Law Manual, *Principles of Hospital Liability* (1986)).

¶23. Importantly, Newton does not have to prove her negligence claim against St. Dominic at this stage of the proceedings. To survive summary judgment, all Newton must do is produce evidence showing that genuine issues of material fact exist for trial on the elements of her negligence claim against St. Dominic. M.R.C.P. 56(c). She has done so. The expert report and deposition of Newton's expert, Dr. Phillip Beron, provided significant and probative evidence on each element of negligence.

¶24. Dr. Beron's expert report reveals that he is a radiation oncologist who is "an attending physician and assistant clinical professor in the department of radiation oncology at the UCLA Medical Center and the David Geffen School of Medicine." He treats skin conditions using radiation therapy on a routine basis. Further, he is the chair of the Quality Oversight Committee in the Department of Radiation Oncology. He is a member of the Quality Measurement and Improvement Committee at the UCLA Medical Center. It is obvious and it is not disputed that Dr. Beron was familiar with safety and quality procedures applicable to the administration of radiation therapy. Indeed, St. Dominic has not challenged his qualifications.

¶25.   Dr. Beron reviewed Newton's medical records. He said that Newton had comorbidities including hypertension and diabetes that raised her risk of radiation side effects. He identified three problems with the dose of radiation prescribed by Dr. Johnson: the dose was too high, the wrong technique was employed, and the volume of area to which radiation was administered was too large. Dr. Beron testified that, according to the medical literature establishing the standard of care, those factors resulted in Newton's receiving a dose of radiation that was four to five times higher than the necessary dose. According to Dr. Beron, the errors caused Newton to suffer a Grade 4 skin reaction to the radiation treatment ordered by Dr. Johnson. He said that the only higher grade, Grade 5, is death. Dr. Beron said that Newton's case was the first time he had seen a Grade 4 reaction to radiation therapy ordered to treat a benign skin condition. Dr. Beron opined that, because the correct radiation doses are clear from the literature, Dr. Johnson should have obtained Newton's informed consent to exceed those doses, and he did not do so. Therefore, Dr. Beron testified, there was a lack of informed consent. Dr. Beron rendered all his opinions to a reasonable degree of medical probability.

¶26.   Dr. Beron testified also about how St. Dominic had gone wrong. Dr. Beron opined that the standard of care applicable to a hospital facility that administers radiation treatment requires policies, procedures, and safety mechanisms to ensure that a patient is not administered an excessive dose of radiation. He testified that numerous actors are involved in the administration of radiation. The radiation oncologist writes the prescription. Then, physicists and dosimetrists are involved in administering the radiation treatment. Dr. Beron

13

opined that, if one of those actors had reviewed Newton's treatment plan, he or she would have realized that Dr. Johnson's prescription called for a dangerously high dose of radiation that conflicted with the literature, and the problem could have been reported and corrected. He said that "if a radiation oncologist writes a prescription that's wrong, the dosimetrist isn't going to follow it." "[T]hey are not going to just follow that blindly, they are going to say something to the team." "The same with the physicist." "[T]he physician is [not] omnipotent." Because the dose that Dr. Johnson had ordered for Newton exceeded that provided by the medical literature, Dr. Beron opined that, if St. Dominic had safety and quality assurance policies and procedures in place including peer review,[3] chart rounds,[4] and quality meetings, the error would have been caught, and Newton would have had a much different outcome. Dr. Beron testified that he had seen no evidence in the medical records that St. Dominic had the safety procedures he described in place or, if it did, that the hospital had followed them.

¶27.    The above evidence from Dr. Beron's deposition establishes that Newton provided medical testimony on the standard of care applicable to St. Dominic, that St. Dominic breached the standard of care, and that the breach proximately caused Newton's injuries. St. Dominic has submitted no evidence that it had any safety and quality assurance policies and procedures in place. St. Dominic did produce the testimony of another radiation oncologist,

---

[3] Dr. Beron explained that peer review consists of review of a patient's treatment plan by another radiation oncologist.

[4] At chart rounds, the entire radiation treatment team including nursing staff, radiation therapists, physicists, and dosimetry staff meets and discusses patients' treatment plans.

14

Dr. Eric Balfour. Dr. Balfour testified that he was present at chart rounds on July 22, 2013, along with physicists, dosimetrists, radiation therapists, nurses, and others. Dr. Balfour testified that he reviewed Newton's treatment plan, including her radiation dosage up to that point, and signed off on it. Dr. Balfour testified that he could not recall whether he had reviewed Newton's treatment plan as part of a peer review process, or whether he was simply acting as a fill-in for Dr. Johnson. Dr. Balfour's deposition provides evidence that some form of safety and quality assurance policies and procedures might have been employed by St. Dominic. But Dr. Balfour testified that he had looked at Newton's treatment plan a single time and that he never reviewed the higher doses of radiation that Dr. Johnson ordered to be administered to Newton after July 22, 2013. Nor had he ever treated anyone with Newton's particular skin condition. So Dr. Balfour's deposition does not establish that St. Dominic complied with the standard of care outlined by Dr. Beron. And although St. Dominic argued at the summary judgment hearing that it had expert testimony that conflicted with Dr. Beron's, conflicts in the expert testimony are for the jury to resolve. ***Palmer v. Anderson Infirmary Benev. Ass'n***, 656 So. 2d 790, 796 (Miss. 1995).

¶28. The majority holds that, because Mississippi hospitals have no duty to supervise independent physicians practicing at their facilities, St. Dominic had no duty to review Dr. Johnson's radiation prescription for safety purposes before carrying it out. ***Trapp v. Cayson***, 471 So. 2d 375, 385 (Miss. 1985) (quoting ***Hardy v. Brantley***, 471 So. 2d 358, 369 (Miss. 1985), *superseded by statute on other grounds as noted in* ***Brown v. Delta Reg'l Med. Ctr.***, 997 So. 2d 195, 197 (Miss. 2008)). But a radiation facility's employing its expertise to

15

review a prescribed dose of radiation before administering it to a patient is not the same thing as physician supervision. The facility, not the physician, is the one administering the radiation therapy. Therefore, the facility has a duty to administer radiation therapy with reasonable care. "[A] hospital must exercise reasonable care in preventing foreseeable injuries to foreseeable patients." *Clark v. St. Dominic-Jackson Mem'l Hosp.*, 660 So. 2d 970, 972 (Miss. 1995) (citing *Swan v. I.P., Inc.*, 613 So. 2d 846, 856 (Miss. 1993)). A hospital's violation of its own safety regulations that proximately causes injury can provide a basis for a finding that the hospital was negligent. *Palmer*, 656 So. 2d at 796. Dr. Beron testified that reasonable care requires a radiation facility to refrain from unthinkingly administering whatever radiation dosage a radiation oncologist has ordered and instead to adhere to safety and quality assurance policies and procedures that ensure against physician error. Therefore, Newton presented sufficient expert testimony establishing the hospital's duty of care in the administration of radiation therapy.

¶29.    Dr. Beron testified that St. Dominic breached its duty of care either by not having safety and quality assurance policies and procedures in place or by failing to follow them. He testified that, but for the breach, a reasonable medical probability existed that St. Dominic's staff would have caught Dr. Johnson's radiation dosage error, which was in conflict with the medical literature. He testified that if the error had been detected, then St. Dominic would not have administered dangerously high levels of radiation to Newton, sparing her from debilitating injuries. Because Newton has presented medical evidence on each element of hospital negligence, the trial court correctly denied St. Dominic's motion for summary

16

judgment. I reject the majority's holding that a hospital's administering radiation at the direction of an outside physician has no responsibility to review the dosage prescribed. I respectfully dissent.

**KING, P.J., JOINS THIS OPINION.**